1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6  SAMIULLA SAFI,

7                              Petitioner,

8        v.

9  KRISTI NOEM, et al.,

10                         Respondent.

Case No. 2:26-cv-00308-TLF

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS
IN PART

11        Immigration detainee Samiullah Safi petitions the Court under 28 U.S.C. § 2241

12  for an order (1) immediately releasing him from detention; (2) permanently enjoining his

13  re-detention during the pendency of his removal proceedings absent written notice and

14  a hearing before re-detention where the Government[1] must prove by clear and

15  convincing evidence that petitioner is a flight risk or a danger to the community and that

16  no alternatives to detention would mitigate those risks; (3) enjoining the Government

17  from placing GPS ankle monitors on petitioner upon his release, absent clear and

18  convincing evidence that petitioner is a flight risk or danger a danger to the community

19  and that no other alternatives would mitigate those risks; (4) declaring petitioner's

20  redetention while removal proceedings are ongoing without first proving an

21  individualized determination before a neutral decisionmaker violates the Due Process

22  Clause of the Fifth Amendment; (5) awarding attorney fees and costs. Dkt. 1 (petition).

23

24  [1] Hereinafter, this order refers to respondents collectively as "the Government."

25

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 1

**BACKGROUND**

Petitioner is a native and citizen of Afghanistan. Dkt. 7 (Declaration of Gennadiy Baz ("Baz Decl.") at ¶ 3. On September 28, 2023, Petitioner entered the United States from Mexico, at or near San Ysidro, California without being admitted or paroled after inspection by an immigration officer. *Id.* ¶ 4. Petitioner was released on an Order of Recognizance ("OREC"). *Id.* On October 1, 2023, Border Patrol personally served petitioner with a Notice to Appear ("NTA") charging petitioner as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than designated by the Attorney General. *Id.* ¶ 5; Dkt. 6 (Declaration of James C. Strong ("Strong Decl.") at Ex. A (Notice to Appear). The initial appearance date on the NTA was scheduled for March 10, 2027, in Seattle Immigration Court. Dkt. 5 (Baz Decl.) at ¶ 5.

On October 14, 2023, petitioner was encountered at the Blaine, Washington, Port of Entry, trying to enter the United States from Canada. *Id.* ¶ 6. Respondents represent petitioner was "paroled" into the United States, with the original court date of March 10, 2027, in Seattle Immigration Court. *Id.* ¶ 6. Petitioner asserts that he was released on an OREC, though it is unclear if he contends this was the same or a different OREC. Dkt. 1; Dkt. 8. On February 28, 2024, the NTA was filed with the Executive Office for Immigration Review ("EOIR"). Dkt. 7 (Baz Decl.) at ¶ 7. On May 6, 2024, petitioner filed a Form I-589, Application for Asylum and Withholding of Removal with EOIR. *Id.* ¶ 8.

The Government's Record of Deportable/Inadmissible Alien, Form I-213, dated December 4, 2025, indicate that the Border Patrol encountered petitioner at

approximately 8:00 p.m. on December 4, 2025, roughly 800 feet south of the Canadian border in Sumas, Washington. *Id.* ¶ 9; Dkt. 6 (Strong Decl.) at Ex. B (I-213); Dkt. 8, Traverse. Border Patrol witnessed petitioner exit a vehicle and then the vehicle drove away. Dkt. 7 (Baz Decl.) at ¶ 9. Petitioner was left standing on the corner. *Id.* Border Patrol contacted petitioner, who then admitted he was attempting to enter Canada illegally. *Id.* Petitioner was taken into custody and transported to NWIPC. *Id.*; Dkt. 6 (Strong Decl.) at Ex. C (Arrest Warrant indicating service on Petitioner in Sumas, Washington).

**DISCUSSION**

Respondents argues relief should be denied because petitioner is subject to mandatory detention under 8 U.S.C. § 1225. Dkt. 5. Persons detained under § 1225 may only be released under the agency's parole authority. 8 U.S.C. § 1182(d)(5)(A). Petitioner was released on an Order of Recognizance ("OREC") in September 2023. Petitioner was subsequently re-detained and released on October 1, 2023, when he was encountered trying to re-enter the United States from Canada. The Government asserts that petitioner was then "paroled" into the country, seeming to imply that this occurred under 8 U.S.C. § 1182(d)(5)(A). Petitioner appears to dispute this, asserting he was released on an OREC on October 1, 2023. Dkt. 1 at 2.

The parties agree that petitioner was initially released on an OREC in September 2023. Release or "conditional parole" under an OREC is authorized under § 1226(a)(2)(B). *See* 8 U.S.C. § 1226(a)(2)(B); *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding noncitizens released on an OREC must necessarily have been detained and released under § 1226); *Del Valle Castillo v.*

*Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025); *see also, Romero v. Hyde*, 795 F. Supp. 3d 271, 285-288 (D. Mass. 2025) (in determining petitioners, who had been apprehended on arrival, released, and were later apprehended again, were subject to discretionary detention under § 1226(a) not mandatory detention under § 1225(b)(2), the Court considered the Government's treatment of the petitioner seeking habeas relief).

The Government presents no evidence that petitioner was "paroled into the country" under 8 U.S.C. § 1182(d)(5)(A) as they appear to imply, after he was encountered entering the United States from Canada on October 1, 2023. Release on parole under § 1182(d)(5)(A) is only allowed where the Secretary of Homeland Security "in his discretion parole[s] into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." The Government presents no evidence that petitioner was released on this basis on October 1, 2023.

Furthermore, the Notice to Appear in the record reflects that petitioner is charged only under INA § 212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182(a)(6)(A)(i)) as "present in the United States without being admitted or paroled" which supports the conclusion that he is detained under § 1226(a). Dkt. 8 (Collins Decl.) at Ex. I ("Notice to Appear"); *Del Valle Castillo*, 2025 WL 3524932, at *6; *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025). The Court thus finds § 1226(a) governs petitioner's detention,

and he is not subject to mandatory detention under § 1225 and would be entitled to a bond hearing.[2]

Respondents next argue petitioner was re-detained because he was found 800 feet south of the Canadian border and admitted he was attempting to enter Canada illegally. Applying *E.A. T.B v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. Aug. 18, 2025), the Court finds petitioner possesses due process protections and reviews the Government's decisions and actions to deprive petitioner of his liberty interests under the factors set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

As to the first factor, the Court rejects the notion that petitioner's weighty liberty interest is greatly diminished solely because he is a noncitizen in immigration proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action); *see also Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). The first factor weighs in petitioner's favor.

The Government next argues that petitioner's re-arrest and detention did not require *any* process. Dkt. 5. This argument fails. The Government, in releasing petitioner on an OREC in 2023 necessarily found petitioner was neither a flight risk nor

---

[2] The Government cites *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), which supports the Government's position here that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). With respect to the Fifth Circuit, this split decision is not binding on this Court and is inconsistent with this Court's view of the statutory text and relevant Ninth Circuit and Supreme Court authority interpreting it.

a danger to the community. *See Ledesma Gonzalez v. Bostock*, 25-cv-01404-JNW-
GJL, --- F. Supp. 3d ---, 2025 WL 2841574 (Oct. 7, 2025) (finding "[w]hen ICE released
[petitioner] … it did so after determining—as required by regulation—that "such release
would not pose a danger to property or persons, and that the alien is likely to appear for
any future proceeding." 8 C.F.R. § 236.1(c)(8). By issuing the OREC, ICE necessarily
found that [petitioner] was neither a flight risk nor a danger to the community"). And as a
court in this district has recently stated:

> When ICE has previously released a noncitizen after determining they are
> not a flight risk or danger to the community, "the BIA has limited this
> [revocation] authority such that, in practice, the DHS re-arrests non-
> citizens only after a 'material' change in circumstances: 'where a previous
> bond determination has been made by an immigration judge, no change
> should be made by the DHS absent a change of circumstance.'" *Vargas v.
> Jennings*, Case No. 20-cv-5785, 2020 WL 5074312, at *2 (N.D. Cal. Aug.
> 23, 2020) (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal.
> 2019) (quoting *Matter of Sugay*, 17 I.&N. Dec. 637, 640 (B.I.A. 1981)));
> *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017). This
> standard prevented arbitrary revocations and ensured that detention
> decisions rested on individualized assessments of changed circumstances
> rather than categorical assumptions.

*Ledesma Gonzalez*, 2025 WL 2841574, at *4.

Petitioner, having been previously released after a finding he is not a flight risk or
danger, has a liberty interest in remaining free from physical restraint. *See Doe v.
Becerra*, —— F. Supp. 3d at ——, 2025 WL 691664, at *5 (W.D. Wash. Sept. 12, 2025)
("The Supreme Court has repeatedly recognized that individuals who have been
released from custody, even where such release is conditional, have a liberty interest in
their continued liberty."). Even if petitioner were released on parole under §
1182(d)(5)(A), he would still retain a liberty interest and be entitled to the protections of
due process. *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 6

2025) ("When he was released from his initial detention on parole [under § 1182(d)(5)(A)], Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause."). As courts have held, even where the terms of release allow for discretionary termination, a hearing is still required. *Id.* at 1136 ("That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee.").

Thus, there is a risk of erroneous deprivation of such interest if no process is given, and there is a probable value of additional or substitute procedural safeguards where petitioner can challenge the grounds for his redetention. But the question remains of what process is due to petitioner under the circumstances of his case.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

1    Here, the Government submits evidence that petitioner was found by ICE officers

2    800 feet south of the Canadian border and that he stated to them that he planned to

3    illegally cross the border into Canada. Petitioner appears to dispute this asserting in the

4    petition that "on December 5, 2025, while lawfully present at Peace Arch Park in Blaine,

5    Washington, Petitioner was abruptly and unlawfully detained by U.S. Border Patrol

6    without prior notice or explanation." Dkt. 1 at 5.

7    At the time of his arrest, Petitioner was not engaged in any unlawful activity and

8    posed no danger to the community. *Id*. But evidence in the form of Record of

9    Deportable/Inadmissible Alien, Form I-213, dated December 4, 2025, supports the

10    Government's version of events. Dkt. 6 (Strong Decl.) at Ex. B (I-213). And given that

11    petitioner had previously been detained in October 2023 coming into the United States

12    from Canada after having been released on an OREC, the circumstances of petitioner's

13    detention could reasonably be seen as presenting an urgency requiring detention before

14    a hearing. Under these circumstances, in evaluating the second *Matthews* factor, the

15    Court finds a prompt post-deprivation hearing would be appropriate.

16    And the Court finds the Government's interest in civil detention without a hearing

17    is low. *See E.A. T.B*, 795 F. Supp. 3d at 1323-24 (citing *Ortega v. Bonnar*, 415 F. Supp.

18    3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any

19    point, it has the power to take steps toward doing so; but its interest in doing so without

20    a hearing is low.")). Although it would require the expenditure of resources to provide

21    petitioner a post-deprivation hearing — held by an immigration judge within a

22    reasonable time after detention, those costs are far outweighed by the risk of erroneous

23    deprivation of the liberty interest at issue. The third *Mathews* factor weighs in

24

25

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS IN PART - 8

petitioner's favor of having a prompt post-deprivation hearing addressing the basis for his re-detention and any impact on the assessment of dangerousness and risk of flight

Petitioner also seeks an order enjoining respondents from re-detaining petitioner absent written notice and a pre-deprivation hearing at which DHS must justify any re-detention by clear and convincing evidence of flight risk or danger to the community and show that no alternatives to detention would mitigate any such risks. The Court denies without prejudice petitioner's request for a permanent injunction prohibiting his re-detention during his removal proceedings absent written notice and a hearing. Petitioner has not specifically addressed his entitlement to an injunction under *Winter v. Natural Resources Def. Council Inc.*, 555 U.S. 7 (2000).

## CONCLUSION

Accordingly, the Court **ORDERS**:

(1) The Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

(2) Based on this review of the *Mathews* factors, the Court finds that due process requires that petitioner receive notice and an opportunity to be heard by a neutral immigration judge at a meaningful time. The COURT GRANTS IN PART petitioner's request for habeas corpus relief for a deprivation of due process. The Court DENIES petitioner's request for immediate release.

(3) The Court ORDERS the respondents to provide petitioner a hearing in which the Government bears the burden of proof, under *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005), abrogated on other grounds in *Jennings v. Rodriguez,* 583 U.S. 281, 286 (2018), to justify immigration re-detention by clear and convincing

evidence. *Singh v. Holder,* 638 F.3d 1196, 1203-1204 (9th Cir. 2011), abrogated

on other grounds in *Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1211-1214 (9th

Cir. 2022); *see also, Foucha v. Lousiana,* 504 U.S. 71, 80 (1992) (the

government must bear the burden of proof for civil commitment by clear and

convincing evidence); *Woodby v. Immigration and Naturalization Serv.,* 385 U.S.

276, 285 (1966) ("This Court has not closed its eyes to the drastic deprivations

that may follow when a resident of this country is compelled by our government

to forsake all bonds formed here and go to a foreign land where he often has no

contemporary identification."). The government must provide adequate notice

and due process protections similar to hearings under *Morrissey v. Brewer,* 408

U.S. 471 (1972) within 10 calendar days after this Order is filed. The hearing

shall be conducted by an immigration judge to determine whether release on

conditions should be granted, or whether detention is warranted. If petitioner is

released, he shall be released without imposition of a GPS monitor unless

respondents meet their burden by clear and convincing evidence that the monitor

is needed because petitioner is a danger to the community or a flight risk. *See*

*Palacio v. Hermosillo,* No. C25-1983-RSM-MLP, 2025 WL 4033287, at *3 (W.D.

Wash. Dec. 22, 2025), report and recommendation adopted sub nom. *Quiva*

*Palacio v. Wamsley,* No. C25-1983-RSM-MLP, 2026 WL 84930 (W.D. Wash.

Jan. 12, 2026).

(4) There are other cases in which district courts have found that a <u>pre-deprivation</u> hearing was the proper remedy for granting the habeas corpus petition.[3] But in those cases, there was no evidence that the petitioner was detained 800 feet from the border and stated he was attempting to illegally cross the border into Canada. The Court therefore finds that under these circumstances, a <u>post-deprivation</u> hearing is appropriate under the balancing of interests for *Mathews* Due Process analysis. The post-deprivation hearing should have been conducted within a reasonable time after December 4, 2025, when petitioner was arrested and detained.

(5) The Court also ORDERS respondents to file with the Court on or before March 2, 2026, a joint status report signed by counsel for both parties, showing that this Order has been followed, and to inform the Court of the results of the hearing. The Court's Order concerning notice of removal, and transfer, of petitioner (Dkt. 5) shall remain in effect until the Court determines, by reviewing the joint status report and any additional information required to implement the habeas corpus relief in this case, that this case should be closed.

(6) The Court will entertain a motion for attorney fees and costs as requested in the petition. Any such motion shall be noted under Local Rule 7(d)(3).

---

[3] E.g., *MZH v. Hermosillo,* C 25-2523-KKE, 2025 WL 3718655 (W.D. Wash. Dec. 23, 2025); *Pinci v. Noem,* 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025) (noting that petitioner had no criminal record); *Rodriguez Diaz v. Kaiser,* 25-cv-05071-TLT, 2025 WL 3011852, at *10 (N.D. Cal. Sep. 16, 2025).

1    Dated this 17th day of February, 2026.

2

3

4    _____
     Theresa L. Fricke
5    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25